UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------X

Raffaele Ocello,

                    Plaintiff,              CV-05-3725

     - against -

City of New York, Gates Construction        MEMORANDUM OPINION
Corporation, Great Lakes Dredge and         AND ORDER
Dock Company LLC, and Harris Structural
Steel Company, Inc.,

                    Defendants.

-----------------------------------------X

SIFTON, Senior Judge.

        Plaintiff Raffaele Ocello ("Ocello") commenced this maritime

action against defendants City of New York ("City"), Skanska USA,

Inc., Skanska USA Construction Services, Inc., Skanska USA

Building Inc., and Barney Skanska, Inc. (collectively "Skanska")

pursuant to the Jones Act, 46 U.S.C. § 30104 *et seq.* Plaintiff

later amended his complaint, adding defendants Gates Construction

Corporation ("Gates"), Great Lakes Dredge and Dock Company, Great

Lakes Drege and Dock Company LLC (collectively "Great Lakes"),

and Harris Structural Steel Company, Inc. ("Harris").[1]  Plaintiff

seeks damages, maintenance, cure, and attorneys' fees.

        Presently before this Court are the objections of defendants

Gates and Great Lakes to Magistrate Judge James Orenstein's

recommendation to (1) strike the answer of Gates and Great Lakes;

_____

        [1] The Skanska defendants were dismissed from this action, with
prejudice, on July 3, 2007.

(2) terminate as moot plaintiff's motion for lesser sanctions; (3) enter a default judgment against Gates and Great Lakes with respect to all claims pending against them; (4) dismiss Gates' and Great Lakes' outstanding counterclaims; and (5) terminate as moot Gates' and Great Lakes' motions for leave to implead third-party defendants and to impose discovery-related sanctions against Ocello and Harris.  For the reasons set forth below, I adopt Magistrate Judge Orenstein's Report and Recommendation.

## Background

The following facts are taken from the Amended Complaint, the parties' submissions in connection with the instant motions, and the record of the prior proceedings before Judge Orenstein. Disputes are noted.

In 2005, plaintiff Ocello was employed by the City as a seaman on the Staten Island Ferry, which docks at the City-owned St. George Terminal, Staten Island.

On March 9, 2005, while offloading passengers from the Guy V. Molinari vessel at the St. George Terminal, a section of railing fell from the apron (a device lowered from the dock to the ferry), striking and injuring Ocello on the head and upper body.

On September 5, 2005, plaintiff commenced this action. During the course of discovery, plaintiff learned that the City had conducted an investigation of his accident.  The report

issued in connection with the investigation found that the
railing in question had most likely been improperly welded to the
apron during dock construction that took place between 1995 and
1996.  The report stated that defendant Gates was the general
contractor in charge of the construction and defendant Harris was
a subcontractor responsible for fabricating parts off-site.  Upon
learning these facts, on May 1, 2006, plaintiff filed an amended
complaint, adding defendants Gates, Great Lakes, and Harris.
Amended Complaint, DE 20.

On June 23, 2006, Gates and Great Lakes made their initial
appearance in this case, when their counsel, Marshall, Dennehey,
Warner, Coleman & Goggin, attended the discovery planning
conference before Judge Orenstein.  Counsel informed the court
that defendant Gates was no longer in existence and that
defendant Great Lakes had acquired Gates, although he did not
know the details of the acquisition.  June 23, 2006 Transcript
["June 23 Tr."] at 11-12, DE 80.  Counsel stated that he
anticipated having difficulty meeting any discovery demands
because he did not know the location of Gates' records and did
not "have a live body for Gates." *Id.* at 11.  Judge Orenstein
warned counsel that if Gates failed to provide discovery because
the client could not be located a recommendation to strike the
answer and enter a default would be made.  *Id.* at 14.

That same day, Gates and Great Lakes filed their answer,

denying plaintiff's allegations that Great Lakes had acquired Gates' assets and liabilities on or about 1991. Answer ¶¶ 38, 39, DE 27. Gates and Great Lakes also filed cross-claims against their co-defendants alleging, *inter alia*, that the contract between Great Lakes, Gates and the other defendants required the other defendants to secure liability insurance policies that covered "work to be performed by defendants Great Lakes Dredge and Dock Company, L.L.C. and Gates Construction Corporation." Answer, p. 7.

On November 7, 2006, plaintiff informed the court that neither Gates nor Great Lakes had responded to his discovery demands. Letter from Rafaelle Ocello, DE 38. At the November 9, 2006 status conference before Judge Orenstein, Gates' counsel informed the court that the documents plaintiff requested might be found in Chicago. Declaration of Cynthia Goldman, ¶ 5, DE 92. Gates was ordered to "produce information about its insurance coverage pursuant to Rule 26(a) no later than November 16, 2006, and . . . produce the documents and information responsive to all outstanding discovery requests no later than November 23, 2006." Civil Conference Minute Order, DE 39.

On November 15, 2006, the City requested Gates and Great Lakes to produce "[a]ll documents relating to the assumption of liabilities of Gates . . . by Great Lakes . . ." Request for Production of Documents, p. 3, DE 98.

On November 16, 2006, Gates and Great Lakes submitted a copy of their insurance policy for the period between October 2004 and October 2005, and supplemented their initial Rule 26 disclosure statement, in which they identified Joseph McIlhnney ("McIlhinney") as an "individual likely to have discoverable information relevant to the disputed facts." Supplement Disclosure Statement, p.1, Defendant City Exhibit C, DE 92. McIlhinney's contact information was listed as c/o Great Lakes. *Id.*

On November 30, 2006, after Gates and Great Lakes failed to comply with the court's discovery order, plaintiff filed a motion to compel disclosure and sanction them. DE 44. Plaintiff sought a recommendation to strike their answer or an order precluding the presentation of evidence related to liability at trial.

Counsel for Gates and Great Lakes responded to plaintiff's motion, stating that Great Lakes had purchased the shares of Gates in 1991 and that Gates had been dissolved on December 31, 2001. Counsel also stated that Gates' records had been placed in a "truck body" in Staten Island and that the records were destroyed by water damage and discarded prior to the commencement of the action against Great Lakes and Gates. Affidavit of John R. Geraghty, December 5, 2006, ¶¶ 5-8, DE 45.

On December 4, 2006, Great Lakes and Gates responded to plaintiff's interrogatories. Great Lakes and Gates Exhibit J, DE

83. That same day counsel for Great Lakes and Gates learned of McIlhinney's contact information and on December 8, 2006, counsel initiated contact with him. June 20, 2007 Transcript ["June 20 Tr."] at 35 and 41, DE 121.

Counsel for the parties exchanged emails on December 12, 2006, at which time plaintiff's counsel asked counsel for Gates and Great Lakes if he had anyone with knowledge about the disputed facts who could be produced for a deposition. Gates and Great Lakes' counsel did not inform plaintiff about his contact with McIlhinney. Plaintiff's Exhibit I, DE 79.

On December 18, 2006, Judge Orenstein heard oral argument on plaintiff's motion, as which time counsel for Gates and Great Lakes informed the court there were no documents in existence that were responsive to the discovery demands. Counsel stated that he had been under the mistaken impression that the documents were stored in Chicago, when they had in fact been stored in Staten Island. December 18, 2006 Transcript ["Dec. 16 Tr."] at 5, DE 81. Counsel also informed the court that they did not have any witnesses. June 20 Tr. at 41-42.

Judge Orenstein denied plaintiff's motion for sanctions because defendants Gates and Great Lakes had "no further responsive records to provide and . . . any responsive records were discarded before those defendants had any reason to believe they were under any obligation to preserve them." Civil

Conference Minute Order, DE 50. Judge Orenstein also ordered the prompt "deposition of the last custodian of the discarded records." *Id.*

On January 4, 2007, the City produced Earl Baim ("Baim"), New York City Department of Transportation Project Manager, for a deposition. Great Lakes and Gates Exhibit L, DE 83.

On February 13, 2007, Judge Orenstein ordered the parties to complete discovery by March 31, 2007. Amended Case Management and Scheduling Order, DE 59.

On February 28, 2007, Great Lakes employee, Stephan Brogna ("Brogna"), the last custodian of Gates' records, was deposed. He testified that he had been told to look for the documents approximately one year earlier and had informed Great Lakes when he could not find the documents. Brogna Deposition, Plaintiff's Exhibit E at 6 and 23-24, DE 79. He also testified that McIlhinney's name sounded familiar, but that he did not recollect any past conversations with him. *Id.* at 17. During the deposition, the City initiated a line of questioning about the relationship between Gates and Great Lakes, to which counsel for Great Lakes and Gates objected. *Id.* at 27.

On March 19, 2007, Harris produced an employee with knowledge of the terminal construction for a deposition along with project drawings showing that the faulty welds were performed on-site, evidence in support of its position that

responsibility for the faulty welding rested with Gates and Great

Lakes, and not Harris. Great Lakes and Gates Exhibit Q, DE 83.

On April 5, 2007, Great Lakes and Gates sought an extension

of the discovery deadline to produce expert reports after having

an opportunity to review the drawings to be produced by Harris,

and because counsel had "located a former Gates employee, James

McIlhinney, Gates' Project Superintendent at the Staten Island

Ferry project in 1996, and . . . wish[ed] to produce him for a

deposition." Letter from Great Lakes' and Gates' Counsel at 2,

DE 64 at 2.

On April 7, 2007, counsel for Gates and Great Lakes informed

the other parties that Great Lakes intended to file for summary

judgment because Great Lakes was "not liable as a corporate

successor for the tort liability of Gates. . ." and had only

purchased the assets, not the liabilities, of Gates. Plaintiff

Exhibit K, DE 79.

On April 9, 2007, discovery was reopened for the limited

purposes of McIlhinney's deposition and completing expert

reports. Harris was also ordered to produce the outstanding

project drawings. April 9, 2007 Transcript, DE 82.

McIlhinney was deposed on April 16, 2007, at which time he

testified that he had not worked for Gates or Great Lakes since

November 1996 and that he had been in communication with counsel

during the last quarter of 2006. McIlhinney Deposition,

Plaintiff's Exhibit G, at 6 and 9-10, DE 79.

On April 26, 2007, Judge Orenstein held a status conference to address Great Lakes' and Gates' alleged failure to identify McIlhinney as a witness, Great Lakes' alleged failure to raise the corporate successor liability defense, and Great Lakes' and Gates' alleged delay in document production. Judge Orenstein instructed "the parties [to] submit a joint letter proposing a schedule for the litigation of motions by the plaintiff and defendant City of New York for the imposition of Rule 37 sanctions on Gates and Great Lakes based on those parties' alleged failures to honor their discovery obligations." Civil Conference Minute Order, DE 75. Judge Orenstein ordered counsel for Great Lakes and Gates to produce the emails that had been exchanged with McIlhinney.

On April 27, 2007, Gates and Great Lakes served the expert report of engineer Frederick Schmidt.

In May 2007, Great Lakes and Gates produced corporate disclosure documents relating to Great Lakes' acquisition of Gates.

On May 15, 2007, plaintiff filed a motion for sanctions against defendants Gates and Great Lakes, seeking (1) the preclusion of testimony from McIlhinney; (2) the preclusion of the defense that Great Lakes was not the corporate successor to Gates; (3) the disqualification of Gates' and Great Lakes'

counsel from further representation; and (4) any other relief the
court deems appropriate.  On June 7, 2007, the City also filed a
motion for sanctions against Great Lakes and Gates, seeking the
striking of their answer, or in the alternative, an order
precluding the (1) testimony of fact or expert witnesses at trial
and (2)assertion of the defense that Great Lakes was not liable
as Gates' corporate successor.

On June 8, 2007, defendant Harris filed a motion to strike
the answer of defendants Gates and Great Lakes.

On June 19, 2007, Great Lakes and Gates filed a motion
seeking leave to implead as third party defendants White Marine,
Inc., Hennington Durham & Richardson Architect and
Engineering/Daniel Frankfurt, and Daniel Frankfurt, P.C.
Plaintiff, as well as the City and Harris opposed the motion.

On June 20, 2007, oral argument was held before Judge
Orenstein at which time counsel for Great Lakes and Gates
admitted in open court that he had McIlhinney's contact
information as of December 4, 2006.  June 20 Tr. at 41. Counsel
for Great Lakes and Gates also stated that none of the parties
had ever requested documents about the relationship between Gates
and Great Lakes.   June 20 Tr. at 26-27.

Shortly thereafter, Great Lakes and Gates moved for
sanctions against plaintiff and Harris.

On December 21, 2007, Judge Orenstein issued a Report &

Recommendation on the instant motions for sanctions against Great Lakes and Gates.  Judge Orenstein recommended that this Court (1) grant the motions of defendants Harris and the City to strike the answer of Gates and Great Lakes; (2) terminate as moot plaintiff's motion for lesser sanctions; (3) enter a default judgment against Gates and Great Lakes with respect to all of the claims pending against them; (4) dismiss Gates' and Great Lakes' outstanding counterclaims; and (5) terminate as moot Great Lakes' and Gates' various motions for leave to implead third-party defendants and to impose discovery-related sanctions against Ocello and Harris.

### Discussion

The instant motions against Great Lakes and Gates seek the following sanctions: (1) striking their answer; or (2) preclusion of testimony of fact and expert witnesses at trial, and (3) preclusion of the defense that Great Lakes is not the corporate successor to Gates.[2]

Federal Rule of Civil Procedure 72 provides that when ruling on an objection to a magistrate judge's report and recommendation, which is dispositive of a case,

---

[2] I need not consider plaintiff's application for an order disqualifying Gates' and Great Lakes' original counsel from further representation because on January 11, 2008, Judge Orenstein endorsed the motion to withdraw filed by Marshall, Dennehey, Warner, Coleman, and Goggins, thereby rendering the application moot.  To the extent that plaintiff's request applies to defendants' newly retained counsel, I need not consider the issue for the reasons that follow.

> [t]he district judge must determine de novo any part of
> the magistrate judge's disposition that has been
> properly objected to.  The district judge may accept,
> reject, or modify the recommended disposition; receive
> further evidence; or return the matter to the
> magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).  Accordingly, I review Judge

Orenstein's Report and Recommendation de novo.

Federal Rule of Civil Procedure 37 provides for the

imposition of sanctions "[i]f a party ... fails to obey an order

to provide or permit discovery."  Fed. R. Civ. P. 72(b). The

sanctions that may be imposed include, *inter alia,* an award of

attorney's fees, the preclusion of evidence, and the striking of

pleadings and entry of default.  *Id.*

The purpose of Rule 37 sanctions is to (1) "ensure that a

party will not benefit from its own failure to comply," (2) serve

as a "specific deterrent[] . . ." and "obtain compliance with a

particular order issued," and (3) "serve a general deterrent

effect on the case at hand and on other litigation, provided that

the party against whom they are imposed was in some sense at

fault." *Update Art, Inc.*, *v. Moddin Publishing, Ltd.,* 843 F.2d

67, 71 (2d Cir. 1988)(citing *National Hockey League v.

Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976)(per curiam);

*Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures

Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979)).  District courts have

"wide discretion in imposing [Rule 37] sanctions," but the

sanction must be "just" and "relate to the particular claim to

which the discovery order was addressed." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365-1366 (2d Cir. 1991)(internal citations omitted).  The most severe sanctions should not be imposed unless the failure to comply with a discovery order "'is due to willfulness, bad faith, fault or gross negligence, rather than inability to comply or mere oversight.'" *Handwerker v. AT & T Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y. 2002)(quoting *Hochberg v. Howlett*, 92-CV-1822, 1994 WL 174337, *3 (S.D.N.Y. 1994)); *see also Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986); *Luft v.Crown Publishers, Inc.*, 906 F.2d 862, 865 (2d Cir. 1990).

In choosing the appropriate sanction, courts consider a variety of factors, including: "(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the prejudice to the other party; (4) the duration of the period of noncompliance; and (5) whether the non-compliant party had been warned of the consequences of his noncompliance." *Richardson v. New York City Health and Hospitals Corp.*, No. 05-CV-6278, 2007 WL 2597639, at *6 (S.D.N.Y. 2007)(citing *Handwerker*, 211 F.R.D. at 208 (S.D.N.Y. 2002)).  No particular factor is dispositive, and "sanctions must be weighed in light of the full record in the case." *Cine Forty-Second St. Theatre Corp.*, 602 F.2d at 1068 (citing *National Hockey League*, 427 U.S. at 642).  I now examine each factor in turn.

*Reason for Non-Compliance*

Non-compliance with discovery orders will be deemed willful
"when the court's orders have been clear, when the party has
understood them and when the party's noncompliance is not due to
factors beyond the party's control." *Burgie v. Euro Brokers,
Inc.*, No. 05-CV-968, 2006 WL 845400, at *12 (E.D.N.Y.
2006)(quoting *Baba v. Japan Travel Bureau Int'l, Inc.*, 165 F.R.D.
398, 402-03 (S.D.N.Y. 1996), *aff'd*, 111 F.3d 2 (2d Cir. 1997)).

The moving parties argue that Great Lakes and Gates wilfully
concealed McIlhinney's contact information in violation of Rule
26.[3]  Although Great Lakes and Gates concede that they were aware
of McIlhinney's contact information as of December 4, 2006, they
argue that their failure to supplement the Rule 26 disclosure
statement was due to counsel's harmless mistake.  Great Lakes and
Gates further argue that the other parties made no effort to

---

[3]  Rule 26(a) requires a party to disclose:

> without awaiting a discovery request . . . the name and, if known, the
> address and telephone number of each individual likely to
> have discoverable information--along with the subjects of that
> information--that the disclosing party may use to support its claims or
> defenses. . . [and] a copy--or a description by category and
> location--of all documents, electronically stored information, and
> tangible things that the disclosing party has in its possession,
> custody, or control and may use to support its claims or defenses . . .

Fed. R. Civ. P. 26(a).  Rule 26(e) requires a party to:

> supplement or correct its disclosure or response . . . in a timely
> manner if the party learns that in some material respect the disclosure
> or response is incomplete or incorrect, and if the additional
> corrective information has not otherwise been made known to the other
> parties during the discovery process or in writing . . .

Fed. R. Civ. P. 26(e).

contact McIlhinney and there was no reason for concealing McIlhinney's information because his name was included in Baim's diary, which was produced by the City.

Gates' and Great Lakes' argument is contrary to the record, which establishes that between December 2006 and March 2007, the parties and the magistrate judge asked Gates and Great Lakes about the availability of witnesses on multiple occasions.  Each time, however, Gates and Great Lakes failed to inform anyone about their contact with Mcilhinney.  Counsel chose to request an extension to produce McIlhinney after discovery had closed, drafting their letter in such a manner as to create the impression that McIlhinney had just been located.  Only at the deposition of McIlhinney did the parties first learn that counsel for Great Lakes and Gates had been in contact with him since December 2006.

Great Lakes and Gates attempt to avoid responsibility for their actions by shifting the blame to defendant Harris for failing to produce drawings at an earlier date.  Yet at no point during discovery did Great Lakes and Gates inform the court or the other parties that these drawings were required for McIlhinney's deposition.  Moreover, it was not for Great Lakes and Gates to decide when it was appropriate for McIlhinney to be deposed.  Rather than request an adjournment of McIlhinney's deposition until after the drawings were made available or

produce McIlhinney for an initial deposition with the condition
that he be deposed a second time once the drawings were made
available, counsel for Great Lakes and Gates chose not to share
any information regarding the witness with the parties or the
court.

Even crediting Great Lakes and Gates' argument that they had
no reason to hide McIlhinney, their delay in producing McIlhinney
is inexcusable and establishes their intent to produce him only
when it was most advantageous to their defense.[4]  Aside from
their Rule 26 disclosure obligations, Great Lakes and Gates had
multiple opportunities to disclose McIlhinney's whereabouts to
the parties and to the court, but failed to so.  By misleading
the parties and the court about their contact with McIlhinney and
his availability, Great Lakes and Gates engaged in discovery in
bad faith.  Accordingly, I find that Great Lakes and Gates
wilfully failed to disclose information about McIlhinney.

Gates and Great Lakes next argue that they did not wilfully
conceal the status of Gates' records.  Again, the record before
this Court contradicts them.  When their counsel appeared before
Judge Orenstein on November 19, 2006, he informed the court that

---

[4] The parties focus on the listing of McIlhinney's address as c/o Great
Lakes.  Great Lakes and Gates argue that his address was listed as c/o Great
Lakes because they did not know his address at the time their Rule 26
disclosure statement was served and that they never intended to convey the
impression that McIlhinney was a Great Lakes employee.  Regardless of Great
Lakes' and Gates' intent at the time of filing, the fact remains that once
Great Lakes and Gates located McIlhinney they failed to update their Rule 26
disclosure statement.

he thought Gates' documents were located in Chicago, but after plaintiff filed a motion to compel, counsel informed the court that the documents had been destroyed. Based on the credible testimony of the last custodian of the records, Great Lakes knew of the destruction of those documents well before its appearance in this action. Accordingly, I find that Great Lakes behaved, at best, in a grossly negligent manner by failing to promptly inform the court and the other parties that Gates' documents were not in existence.

Great Lakes also maintains that the parties were given notice of its defense that it was not liable for Gates' actions both when it filed its answer and again when Great Lakes responded to plaintiff's first motion for sanctions.[5] Even if the parties were aware of this defense, Great Lakes failed to comply with its Rule 26 obligation to produce all documents in support of this defense by November 23, 2006. Great Lakes only

---

[5] Great Lakes' answer denies the allegation that it purchased the assets and liabilities of Gates. The December 2006 affidavit of Great Lakes' counsel also states that Great Lakes had no involvement in the repair of the St. George Terminal. However, Great Lakes' and Gates' cross-claim against the other defendants specifically refers to their contract with the other defendants and the other defendants' obligations to name both Gates and Great Lakes in the insurance policy. Based on the record, Great Lakes failed to raise its claim that it was not liable for Gates' actions as an affirmative defense, nor has it explained its failure to do so. It is also clear that prior to April 2007, when Great Lakes informed the other parties of its intent to seek summary judgment, Great Lakes and Gates, represented by the same counsel, were proceeding as a single entity for purposes of this action. However, given its denial of the allegation that it had purchased the assets and liabilities of Gates, I am not entirely persuaded that the parties did not have notice of Great Lakes' defense, even if Great Lakes' actions during the course of discovery suggested otherwise. Nonetheless, I need not reach a determination on this issue for the reasons that follow.

provided the parties with corporate disclosure statements in May
2007, well after the close of discovery.[6]   Great Lakes also
thwarted the City's inquiry into the relationship between Gates
and Great Lakes.  In November 2006, the City requested documents
regarding the relationship between Great Lakes and Gates, which
Great Lakes failed to provide until May 2007.  Next, at Brogna's
deposition, the City initiated a line of questioning about the
relationship between Great Lakes and Gates, to which Great Lakes
objected.  Finally, at the June 20, 2007 oral argument before
Judge Orenstein, Great Lakes argued that the City never requested
any documents about the relationship between Great Lakes and
Gates, despite evidence to the contrary.  Based on the record
before this court, it is clear that Great Lakes attempted to
prevent the other parties from inquiring into Great Lakes'
defense that it was not liable for Gates' actions.  Accordingly,
I find that Great Lakes acted in bad faith in connection with its
defense that it was not liable as Gates' corporate successor.

Finally, I note that the pattern of dilatory behavior
displayed by Gates and Great Lakes over the course of discovery
weighs in favor of a finding of wilfulness.  *See United States
Freight Company v. Penn Central Transportation Co.*, 716 F.2d 954

---

[6] Counsel for Great Lakes claims that the delay in producing the
documents was due to the inadvertent mistake of misplacing the documents in
his office.  Even crediting counsel's explanation, the misplacing of the
documents does not excuse Great Lakes' delay in getting the documents to
counsel until six months after the court-imposed November 23, 2006 deadline.

(2d Cir. 1983).  In addition to the aforementioned issues, Great
Lakes and Gates failed to submit responses to plaintiff's
interrogatories and only provided them after a motion to compel
was filed.  Great Lakes also submitted its expert report, which
assigns blame to entities that are not parties to the action,
after the close of discovery.[7]  Gates and Great Lakes had a duty
to engage in discovery in good faith but failed to do so.
Accordingly, Great Lakes' and Gates' failure to comply with its
discovery obligations was wilful, thereby weighing in favor of
striking their answer.[8]

*Lesser Sanctions*

As an alternative to striking their answers and entering
their default, Great Lakes and Gates could be precluded from
offering the testimony of their fact and expert witnesses at
trial or Great Lakes could be precluded from asserting the
corporate successor liability defense.  Discovery could also be
re-opened with the requirement that Gates and Great Lakes bear

---

[7] Great Lakes and Gates' failure to produce the expert report prior to
the close of discovery is particularly troubling because the report relies on
the testimony of McIlhinney, whom Great Lakes and Gates had been in contact
with for several months.

[8] Great Lakes and Gates rely on the Second Circuit's ruling in *Outley v.
City of New York*, 837 F.2d 587 (2d Cir. 1988) to support their position that
their behavior does not merit sanctions.  *Outley*, however, is inapposite.  In
*Outley*, the failure to supplement a Rule 26 disclosure was the only discovery
violation at issue, and was attributed to counsel's inexperience.  Moreover,
in *Outley*, the Circuit was concerned that the district court had precluded
testimony simply out of a motivation to clear its docket.  *See Outley*, 837 F.2d
at 590.  None of the issues addressed in *Outley* are implicated in the instant
action.

the costs.[9]

I do not find lesser sanctions to be appropriate here.
Precluding both McIlhinney and their expert, whose report draws
upon McIlhinney's testimony, would unduly prejudice their co-
defendants, because the testimony of these witnesses is necessary
to determine the issue of liability.  Precluding Great Lakes'
successor liability defense is also not an effective form of
sanctions.  Since discovery in connection with this defense was
never conducted, preclusion would maintain the status quo and not
serve the purpose of Rule 37 sanctions.  Moreover, precluding the
defense does not remedy the prejudice suffered by the other
parties on account of Great Lakes' efforts to thwart any inquiry
into the relationship between Gates and Great Lakes.
Accordingly, preclusion is not an effective sanction.

Finally, allowing discovery to be re-opened with Great Lakes
and Gates bearing the costs does not adequately address the delay
and expense already suffered by the parties nor does it ensure
that Great Lakes and Gates will comply with their obligations in
a timely and honest manner.[10]  Further delay will only serve to

---

[9] I note that Magistrate Judge Orenstein considered this option at the
June 20, 2007 oral argument.  June 20 Tr. at 56.  Although counsel for Great
Lakes stated that the client would bear the costs as an alternative to
preclusion, counsel later withdrew this statement because he was not
authorized to make such a representation. DE 99.

[10] Although Great Lakes and Gates have retained new counsel, based on
their past behavior, I am not convinced that they will participate in the
discovery process in good faith and provide their new counsel with the
information necessary in order to comply with discovery orders.

"increase[] the staleness of the matter and exacerbate[] the
prejudice already caused by [Great Lakes' and Gates'] . . .
misconduct." *Handwerker*, 211 F.R.D. at 210.  Accordingly, lesser
sanctions are not sufficient to ensure that Great Lakes and Gates
do not benefit from their obstruction of discovery.

*Prejudice to Other Parties*

The behavior exhibited by Great Lakes and Gates has
prejudiced the other parties by delaying the resolution of the
claims and increasing the costs of litigation.  From the time of
Great Lakes' and Gates' appearances, this action has been mired
in discovery disputes and has not moved any closer to trial
readiness.  Allowing Great Lakes and Gates to proceed with their
defense at this stage will not remedy the prejudice already
suffered by the parties in preparing their claims and defenses.
Accordingly, this factor weighs in favor of striking the answer
of Great Lakes and Gates.

*Duration of non-compliance*

Each of the aforementioned acts of non-compliance only
lasted several months.  Nonetheless, because Gates and Great
Lakes repeatedly violated discovery orders and obstructed their
adversaries' access to discovery, I find that this factor weighs
in favor of striking their answers.

*Warnings*

The record before me clearly establishes the fact that Gates

and Great Lakes were provided with multiple warnings that failure
to comply with discovery orders would result in sanctions,
including the striking of their answer and the entry of default.
Judge Orenstein warned Great Lakes and Gates at their first
appearance that failure to comply with discovery would result in
a default.  June 23 Tr. at 14.  In November 2006, plaintiff filed
a motion for sanctions against Great Lakes and Gates seeking the
striking of their answer.  Next, the February 13, 2007 scheduling
order explicitly warned the parties that deadlines would be
enforced and that sanctions may be imposed, including the
recommendation of striking their answer and entry of default if
the parties failed to comply with the deadlines.  Given the
number of clearly stated warnings, there is no doubt that Gates
and Great Lakes were on notice that their behavior could lead to
sanctions, including the striking of their answers.  Accordingly,
this factor also weighs in favor of striking their answer.

     Having reviewed the above factors, I find that the behavior
exhibited by Gates and Great Lakes warrants the striking of their
answers, entries of default against them, and dismissal of their
cross-claims.  Although striking their answer is a harsh
sanction, I find it appropriate here, because Great Lakes and
Gates wilfully and repeatedly ignored their obligations and
misled both the court and the other parties throughout the course
of discovery.  Accordingly, I adopt the Magistrate Judge's Report

and Recommendation to strike the answers, dismiss the cross-claims, enter a default against defendants Gates and Great Lakes, and deny Great Lakes and Gates' motions to implead third parties and seek sanctions against Harris and plaintiff as moot.

### Conclusion

For the reasons set forth above, I adopt Magistrate Judge Orenstein's Report & Recommendation to strike the answers, dismiss the cross-claims, and enter a default against defendants Gates and Great Lakes, and deny Great Lakes and Gates' motions to implead third parties and seek sanctions against Harris and plaintiff as moot. The Clerk is directed to enter notes of default against defendants Gates and Great Lakes and to transmit a copy of the within to the parties and Magistrate Judge Orenstein.

SO ORDERED.

Dated:    Brooklyn, NY
          March 20, 2008


                    By:  /s/ Charles P. Sifton (electronically signed)
                         United States District Judge