UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------X

Raffaele Ocello,

                    Plaintiff,                    CV-05-3725

     - against -

City of New York, Gates Construction          MEMORANDUM OPINION
Corporation, Great Lakes Dredge and           AND ORDER
Dock Company LLC, and Harris Structural
Steel Company, Inc.,

                    Defendants.

------------------------------------------X

SIFTON, Senior Judge.

     Plaintiff Raffaele Ocello ("Ocello") brings this maritime

action against defendants City of New York ("City"), Gates

Construction Corporation ("Gates"), Great Lakes Dredge and Dock

Company, Great Lakes Dredge and Dock Company LLC (collectively

"Great Lakes"), and Harris Structural Steel Company, Inc.

("Harris") pursuant to the Jones Act, 46 U.S.C. § 30104 *et seq.*[1]

Presently before this Court is defendants Gates and Great Lakes'

motion for reconsideration of the Court's March 20, 2008

Memorandum Opinion & Order adopting Magistrate Judge Orenstein's

December 21, 2007 Report and Recommendation.

### Background

     The following facts are taken from the parties' submissions

---

[1] Defendants Skanska USA, Inc., Skanska USA Construction Services, Inc.,
Skanska USA Building Inc., and Barney Skanska, Inc. were dismissed from this
action, with prejudice, on July 3, 2007.

in connection with this motion and the prior proceedings before
the undersigned.

In 2005, plaintiff Ocello was employed by the City as a
seaman on the Staten Island Ferry, which docks at the City-owned
St. George Terminal, Staten Island.

On March 9, 2005, while offloading passengers from the Guy
V. Molinari vessel at the St. George Terminal, a section of
railing fell from the apron (a device lowered from the dock to
the ferry), striking and injuring Ocello on the head and upper
body.

On September 5, 2005, plaintiff commenced this action.
During the course of discovery, plaintiff learned that the City
had conducted an investigation of his accident.  The report
issued in connection with the investigation found that the
railing in question had most likely been improperly welded to the
apron during dock construction that took place between 1995 and
1996.  The report stated that defendant Gates was the general
contractor in charge of the construction and defendant Harris was
a subcontractor responsible for fabricating parts off-site.  Upon
learning these facts, on May 1, 2006, plaintiff filed an amended
complaint, adding defendants Gates, Great Lakes, and Harris.
Amended Complaint, Docket Entry ("DE") 20.

On June 23, 2006, Gates and Great Lakes made their initial
appearance in this case, when their counsel, Marshall, Dennehey,

Warner, Coleman & Goggin, attended the discovery planning

conference before the magistrate judge.  Counsel informed the

court that defendant Gates was no longer in existence and that

defendant Great Lakes had acquired Gates, although he did not

know the details of the acquisition.  June 23, 2006 Transcript

["June 23 Tr."] at 11-12, DE 80.  Counsel stated that he

anticipated having difficulty meeting any discovery demands

because he did not know the location of Gates' records and did

not "have a live body for Gates." *Id.* at 11.  The magistrate

judge warned counsel that if Gates failed to provide discovery

because the client could not be located a recommendation to

strike the answer and enter a default would be made.  *Id.* at 14.

That same day, Gates and Great Lakes filed their answer,

denying plaintiff's allegations that Great Lakes had acquired

Gates' assets and liabilities on or about 1991.  Answer ¶¶ 38,

39, DE 27.  Gates and Great Lakes also filed cross-claims against

their co-defendants alleging, *inter alia*, that the contract

between Great Lakes, Gates and the other defendants required the

other defendants to secure liability insurance policies that

covered "work to be performed by defendants Great Lakes Dredge

and Dock Company, L.L.C. and Gates Construction Corporation."

Answer, p. 7.

On November 7, 2006, plaintiff informed the court that

neither Gates nor Great Lakes had responded to his discovery

demands.  Letter from Rafaelle Ocello, DE 38.  At the November 9,
2006 status conference before the magistrate judge, Gates'
counsel informed the court that the documents plaintiff requested
might be found in Chicago.  Declaration of Cynthia Goldman, ¶ 5,
DE 92.  Gates was ordered to "produce information about its
insurance coverage pursuant to Rule 26(a) no later than November
16, 2006, and . . . produce the documents and information
responsive to all outstanding discovery requests no later than
November 23, 2006."  Civil Conference Minute Order, DE 39.

On November 15, 2006, the City requested Gates and Great
Lakes to produce "[a]ll documents relating to the assumption of
liabilities of Gates . . . by Great Lakes . . ."  Request for
Production of Documents, p. 3, DE 98.

On November 16, 2006, Gates and Great Lakes submitted a copy
of their insurance policy for the period between October 2004 and
October 2005, and supplemented their initial Rule 26 disclosure
statement, in which they identified Joseph McIlhnney
("McIlhinney") as an "individual likely to have discoverable
information relevant to the disputed facts."  Supplement
Disclosure Statement, p.1, Defendant City Exhibit C, DE 92.
McIlhinney's contact information was listed as c/o Great Lakes.
*Id.*

On November 30, 2006, after Gates and Great Lakes failed to
comply with the court's discovery order, plaintiff filed a motion

to compel disclosure and sanction them.  DE 44.  Plaintiff sought

a recommendation to strike their answer or an order precluding

the presentation of evidence related to liability at trial.

Counsel for Gates and Great Lakes responded to plaintiff's

motion, stating that Great Lakes had purchased the shares of

Gates in 1991 and that Gates had been dissolved on December 31,

2001.  Counsel also stated that Gates' records had been placed in

a "truck body" in Staten Island and that the records were

destroyed by water damage and discarded prior to the commencement

of the action against Great Lakes and Gates.  Affidavit of John

R. Geraghty, December 5, 2006, ¶¶ 5-8, DE 45.

On December 4, 2006, Great Lakes and Gates responded to

plaintiff's interrogatories. Great Lakes and Gates Exhibit J, DE

83.  That same day counsel for Great Lakes and Gates learned of

McIlhinney's contact information and on December 8, 2006, counsel

initiated contact with him.  June 20, 2007 Transcript ["June 20

Tr."] at 35 and 41, DE 121.

Counsel for the parties exchanged emails on December 12,

2006, at which time plaintiff's counsel asked counsel for Gates

and Great Lakes if he had anyone with knowledge about the

disputed facts who could be produced for a deposition.  Gates and

Great Lakes' counsel did not inform plaintiff about his contact

with McIlhinney.  Plaintiff's Exhibit I, DE 79.

On December 18, 2006, the magistrate judge heard oral

argument on plaintiff's motion, at which time counsel for Gates and Great Lakes informed the court there were no documents in existence that were responsive to the discovery demands.  Counsel stated that he had been under the mistaken impression that the documents were stored in Chicago, when they had in fact been stored in Staten Island.  December 18, 2006 Transcript ["Dec. 16 Tr."] at 5, DE 81.  Counsel also informed the court that they did not have any witnesses. June 20 Tr. at 41-42.

The magistrate judge denied plaintiff's motion for sanctions because defendants Gates and Great Lakes had "no further responsive records to provide and . . . any responsive records were discarded before those defendants had any reason to believe they were under any obligation to preserve them."  Civil Conference Minute Order, DE 50.  He also ordered the prompt "deposition of the last custodian of the discarded records."  *Id.*

On January 4, 2007, the City produced Earl Baim ("Baim"), New York City Department of Transportation Project Manager, for a deposition.  Great Lakes and Gates Exhibit L, DE 83.

On February 13, 2007, the magistrate judge ordered the parties to complete discovery by March 31, 2007.  Amended Case Management and Scheduling Order, DE 59.

On February 28, 2007, Great Lakes employee, Stephan Brogna ("Brogna"), the last custodian of Gates' records, was deposed. He testified that he had been told to look for the documents

approximately one year earlier and had informed Great Lakes when he could not find the documents. Brogna Deposition, Plaintiff's Exhibit E at 6 and 23-24, DE 79. He also testified that McIlhinney's name sounded familiar, but that he did not recollect any past conversations with him. *Id.* at 17. During the deposition, the City initiated a line of questioning about the relationship between Gates and Great Lakes, to which counsel for Great Lakes and Gates objected. *Id.* at 27.

On March 19, 2007, Harris produced an employee with knowledge of the terminal construction for a deposition along with project drawings showing that the faulty welds were performed on-site, evidence in support of its position that responsibility for the faulty welding rested with Gates and Great Lakes, and not Harris. Great Lakes and Gates Exhibit Q, DE 83.

On April 5, 2007, Great Lakes and Gates sought an extension of the discovery deadline to produce expert reports after having an opportunity to review the drawings to be produced by Harris, and because counsel had "located a former Gates employee, James McIlhinney, Gates' Project Superintendent at the Staten Island Ferry project in 1996, and . . . wish[ed] to produce him for a deposition." Letter from Great Lakes' and Gates' Counsel at 2, DE 64 at 2.

On April 7, 2007, counsel for Gates and Great Lakes informed the other parties that Great Lakes intended to file for summary

judgment because Great Lakes was "not liable as a corporate successor for the tort liability of Gates. . ." and had only purchased the assets, not the liabilities, of Gates.  Plaintiff Exhibit K, DE 79.

On April 9, 2007, discovery was reopened for the limited purposes of McIlhinney's deposition and completing expert reports.  Harris was also ordered to produce the outstanding project drawings.  April 9, 2007 Transcript, DE 82.

McIlhinney was deposed on April 16, 2007, at which time he testified that he had not worked for Gates or Great Lakes since November 1996 and that he had been in communication with counsel during the last quarter of 2006.  McIlhinney Deposition, Plaintiff's Exhibit G, at 6 and 9-10, DE 79.

On April 26, 2007, the magistrate judge held a status conference to address Great Lakes' and Gates' alleged failure to identify McIlhinney as a witness, Great Lakes' alleged failure to raise the corporate successor liability defense, and Great Lakes' and Gates' alleged delay in document production.  The magistrate judge instructed "the parties [to] submit a joint letter proposing a schedule for the litigation of motions by the plaintiff and defendant City of New York for the imposition of Rule 37 sanctions on Gates and Great Lakes based on those parties' alleged failures to honor their discovery obligations." Civil Conference Minute Order, DE 75.  The magistrate judge

ordered counsel for Great Lakes and Gates to produce the emails that had been exchanged with McIlhinney.

On April 27, 2007, Gates and Great Lakes served the expert report of engineer Frederick Schmidt.

In May 2007, Great Lakes and Gates produced corporate disclosure documents relating to Great Lakes' acquisition of Gates.

On May 15, 2007, plaintiff filed a motion for Rule 37 sanctions against defendants Gates and Great Lakes, seeking (1) the preclusion of testimony from McIlhinney; (2) the preclusion of the defense that Great Lakes was not the corporate successor to Gates; (3) the disqualification of Gates' and Great Lakes' counsel from further representation; and (4) any other relief the court deemed appropriate. On June 7, 2007, the City also filed a motion for sanctions against Great Lakes and Gates, seeking to strike their answer, or in the alternative, an order precluding the (1) testimony of fact or expert witnesses at trial and (2) assertion of the defense that Great Lakes was not liable as Gates' corporate successor.

On June 8, 2007, defendant Harris filed a motion to strike the answer of defendants Gates and Great Lakes.

On June 19, 2007, Great Lakes and Gates filed a motion seeking leave to implead as third party defendants White Marine, Inc., Hennington Durham & Richardson Architect and

Engineering/Daniel Frankfurt, and Daniel Frankfurt, P.C.

Plaintiff, as well as the City and Harris opposed the motion.

On June 20, 2007, oral argument was held before the magistrate judge at which time counsel for Great Lakes and Gates admitted in open court that he had McIlhinney's contact information as of December 4, 2006. June 20 Tr. at 41. Counsel for Great Lakes and Gates also stated that none of the parties had ever requested documents about the relationship between Gates and Great Lakes. June 20 Tr. at 26-27.

Shortly thereafter, Great Lakes and Gates moved for sanctions against plaintiff and Harris.

On December 21, 2007, the magistrate judge issued a Report & Recommendation recommending that this Court (1) grant the motions of defendants Harris and the City to strike the answer of Gates and Great Lakes; (2) deny as moot plaintiff's motion for lesser sanctions; (3) enter a default judgment against Gates and Great Lakes with respect to all of the claims pending against them; (4) dismiss Gates' and Great Lakes' outstanding counterclaims; and (5) deny as moot Great Lakes' and Gates' various motions for leave to implead third-party defendants and to impose discovery-related sanctions against plaintiff Ocello and defendant Harris.

On January 7, 2008, Gates and Great Lakes retained the law firm Wilson, Elser, Moskowitz, Edelman & Dicker LLP, to replace

Marshall, Dennehey, Warner, Coleman & Goggin as counsel.

On January 10, 2008, Gates and Great Lakes filed objections to the December 21, 2007 Report & Recommendation.

On March 20, 2008, I issued a Memorandum Opinion & Order adopting Magistrate Judge Orenstein's Report & Recommendation and directing the Clerk to enter a notation of default as to defendants Gates and Great Lakes. On March 28, 2008, the Clerk entered a notation of default.

On April 2, 2008, defendants Great Lakes and Gates filed an interlocutory appeal with the United States Court of Appeals for the Second Circuit ("Second Circuit").

On May 28, 2008, the parties appeared for a conference conducted by Second Circuit staff counsel in connection with the pending interlocutory appeal. Great Lakes and Gates state that Second Circuit staff counsel suggested that filing a motion for reconsideration before the undersigned might obviate the need for review by the Second Circuit.

On June 13, 2008, defendants Great Lakes and Gates filed a motion for reconsideration of this Court's March 20, 2008 Memorandum Opinion & Order pursuant to Local Rule 6.3 and Federal Rule of Civil Procedure 59(e) seeking (1) lesser sanctions in the form of bearing the costs of all parties in connection with the Court's March 20, 2008 Order and this Order as well as further costs of all parties for future fact discovery, (2) reinstatement

of their answer, (3) re-opening discovery, and (4) leave to implead third-party defendants.

**Discussion**

*Standard for Reconsideration*[2]

A motion for reconsideration pursuant to Local Rule 6.3 will be granted if the moving party presents factual matters or controlling decisions the court overlooked that might have materially influenced its decision. *Pereira v. Aetna Casualty and Surety Co. (In re Payroll Express Corp.)*, 921 F. Supp. 1121, 1123 (S.D.N.Y. 1996); *Violette v. Armonk Assocs., L.P.*, 823 F. Supp. 224, 226 (S.D.N.Y. 1993). Reconsideration is also appropriate in light of an intervening change of controlling law, the availability of new evidence, the need to correct a clear error, or to prevent manifest injustice. *Doe v. New York City Dep't of Social Servs.*, 709 F.2d 782, 789 (2d Cir. 1983); *Casino, LLC v. M/V Royal Empress*, No. 98-CV-2333, 1998 WL 566772, at *1 (E.D.N.Y. 1998). Additionally, reconsideration is appropriate where a court misinterprets or misapplies relevant case law in its original decision. *Allstate Ins. Co. v. Valley Physical Medicine & Rehabilitation*, No. 05-CV-5934, 2008 WL 942574, at *2 (E.D.N.Y. 2008); *O'Brien v. Board of Educ. of Deer Park Union*

---

[2] Great Lakes and Gates also seek reconsideration pursuant to Federal Rule of Civil Procedure 59(e), which states that "[a] motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Rule 59(e) is inapplicable because only a notation of default as to defendants Great Lakes and Gates has been entered. Accordingly, I consider defendants' motion pursuant to Local Rule 6.3.

-13-

*Free School Dist.,* 127 F. Supp.2d 342, 346 (E.D.N.Y. 2001).

Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been fully considered by the court. *See Caleb & Co. v. E.I. Du Pont De Nemours & Co.*, 624 F. Supp. 747, 748 (S.D.N.Y. 1985). A Local Rule 6.3 motion is not to be used as a substitute for appeal from a final judgment. *See Morser v. A.T.& T. Information Systems*, 715 F. SUPP. 516, 517 (S.D.N.Y. 1989); *Korwek v. Hunt*, 649 F. Supp. 1547, 1548 (S.D.N.Y. 1986). In its motion for reconsideration, a party "may not advance new facts, issues or arguments not previously presented to the court." *Lipton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 1989 WL 162315, at *3 (S.D.N.Y. 1989).

*Great Lakes and Gates' Motion for Reconsideration[3]*

Great Lakes and Gates have not identified any factual matters or controlling decision overlooked or misapplied by this

---

[3]  Local Rule 6.3 requires a notice of motion for reconsideration to be served within ten days after the entry of the court's order.  The notice of motion should be accompanied by a memorandum stating the matters or controlling decisions that the court overlooked.  Affidavits may not be filed without permission of the Court. *See* Local Rule 6.3.

Great Lakes and Gates filed their notice of motion on June 13, 2008, nearly two months after the expiration of the ten day deadline. Their notice of motion was accompanied by an affidavit that was not filed with leave of the Court.

Great Lakes and Gates acknowledge that their motion is untimely, but request that the Court excuse the delay because the motion was filed upon the suggestion of Second Circuit staff counsel at the May 28, 2008 conference. Despite the procedural defects, out of respect for staff counsel, I consider the underlying merits of their motion.

Court, new evidence previously unavailable, or intervening

changes in law.  Rather, Great Lakes and Gates use their motion

to present new arguments that could have been raised in their

objections to the Report and Recommendation.

Great Lakes and Gates argue that because their prior counsel

was responsible for the lack of compliance with their discovery

obligations, consideration of the factors outlined by this Court

in the March 20, 2008 Memorandum Opinion and Order[4] support the

imposition of sanctions against predecessor counsel and lesser

sanctions against Great Lakes and Gates in the form of an award

of costs to all parties in connection with the March 20, 2008

Order, this Order and to cover future fact discovery.

Great Lakes and Gates maintain that they were not aware that

their prior counsel had failed to turn over documents in a timely

manner.  They state that they were not aware that the magistrate

judge had under consideration the imposition of the lesser

sanction of an award of costs, a proposal which prior counsel

first accepted but then rejected as not within his authority to

---

[4] In reaching the conclusion that the Rule 37 sanctions recommended by
the magistrate judge were appropriate, I considered the following factors:
"(1) the willfulness of the non-compliant party or the reason for the
noncompliance; (2) the efficacy of lesser sanctions; (3) the prejudice to the
other party; (4) the duration of the period of noncompliance; and (5) whether
the non-compliant party had been warned of the consequences of his
noncompliance." *Richardson v. New York City Health and Hospitals Corp.*, No.
05-CV-6278, 2007 WL 2597639, at *6 (S.D.N.Y. 2007)(citing *Handwerker*, 211
F.R.D. at 208 (S.D.N.Y. 2002)).  I also noted that no particular factor was
dispositive, and "sanctions must be weighed in light of the full record in the
case." *Cine Forty-Second St. Theatre Corp.*, 602 F.2d 1062, 1068(2d Cir. 1979)
(citing *National Hockey League*, 427 U.S. 639, 642 (1976)).

accept.  Great Lakes and Gates also argue that they did not know
that the magistrate judge was considering striking their answer
until after the Report and Recommendation was issued.  According
to Great Lakes and Gates they have suffered sufficient punishment
by having to incur additional costs to fix the problems caused by
prior counsel, that there is no risk of non-compliance because
the parties have retained new counsel, and re-opening discovery
would be a mere inconvenience to the other parties.

    Defendants Great Lakes and Gates fail to explain why the
above arguments were not made when they filed their objections to
the Report and Recommendation.  Great Lakes and Gates' current
counsel was retained shortly after the issuance of the Report and
Recommendation and filed the objections to the Report and
Recommendation.  The arguments that Great Lakes and Gates are now
raising are based on information that was available to them at
the time they filed their objections and may not be raised for
the first time on a motion for reconsideration.

    In any event, the "acts and omissions of counsel are
normally wholly attributable to the client" and sanctions may be
imposed against a party for her counsel's misconduct.
*Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Employees and
Restaurant Employees Intern. Union*, 00-CV- 3613, 2004 WL 1943099,
at *25 (S.D.N.Y. 2004)(quoting *Cine Forty-Second Street Theatre*,
602 F.2d at 1068). "A litigant chooses counsel at his peril, and

. . .counsel's disregard of his professional responsibilities can lead to extinction of his client's claim." *Cine Forty-Second Street Theatre*, 602 F.2d at 1068. The sanctions imposed against Great Lakes and Gates were therefore appropriate. Accordingly, Great Lakes and Gates' motion for reconsideration is denied.

## Conclusion

For the reasons set forth above, defendants Great Lakes and Gates' motion is denied. The Clerk is directed to transmit a copy of the within to the parties and Magistrate Judge Orenstein. SO ORDERED.

Dated:     Brooklyn, NY
           July 21, 2008


                    By:  /s/ Charles P. Sifton (electronically signed)
                                   United States District Judge